UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor United States Department of Labor,<br><br>Petitioner,<br><br>T&T Offshore, Inc.,<br><br>Respondent | § § § § § § § § § § § § § Civil Action No. 3:18-cv-73 |

**MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE
ADMINISTRATIVE SUBPOENA DUCES TECUM ISSUED BY
THE OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION**

This is an action brought by R. ALEXANDER ACOSTA, Secretary of Labor, U.S. Department of Labor, to enforce compliance with an administrative subpoena duces tecum issued in connection with an ongoing inspection by the Occupational Safety and Health Administration ("OSHA") of a worksite of Respondent T&T Offshore, Inc. Jurisdiction of this action is conferred upon the Court by section 8(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 657(b), and 28 U.S.C. §§ 1331 and 1345. This memorandum of law is submitted in support of the Secretary's petition to compel Respondent to produce documents as demanded by the administrative subpoenas duces tecum duly served upon Respondent.

The petition prays this Court issue an Order directing Respondent to provide OSHA with records and documents concerning matters within the scope of an investigation conducted pursuant to sections 8(a), 8(b), and 8(c) of the OSH Act, 29 U.S.C. § 657(a), (b), and (c). These documents were requested in the subpoena duces tecum issued to Respondent.

While Respondent produced some of the requested documents, it has redacted contact information for employees and has not provided a complete list of employees. The requested

information is relevant to OSHA's investigation of the safety and healthfulness of the working conditions at the inspected worksite, particularly its investigation of the crane policies, procedures and training. As a result of Respondent's refusal to provide the requested information, the Secretary has been hindered in the proper exercise of his lawful authority and responsibility to enforce and administer the Act. Therefore, the Secretary of Labor petitions this Court for an order to compel Respondent to provide OSHA complete responses.

## STATEMENT OF FACTS

On September 20, 2017, Occupational Safety and Health Administration ("OSHA") initiated an inspection of T&T Offshore's work site at 2915 Todd Road in Galveston, Texas in response to a fatal accident occurring on the same day in which a crane operated by a T&T Offshore employee toppled over and struck two employees of Lightering, LLC ("Lightering") another employer working at the site. See Declaration of OSHA Area Director Mark Briggs attached as Exhibit H.

Lightering has been leasing dock and warehouse space from T&T Offshore since 2011 in order to operate two off shore vessels. T&T Offshore provided loading and crane services to Lightering. When Lightering required the use of a crane, it requested a crane and operator from T&T Offshore. On the morning of September 20, 2017, about 8 a.m., Mario Ruiz, Sr., Dock Superintendent for Lightering, requested crane services from T&T Offshore's General Manager, Phillip Leasure in order to load the vessel Elliot Cheramie. See Declaration of OSHA Area Director Mark Briggs attached as Exhibit H.

Normally T&T Offshore sends a barge crane but the barge crane was in Corpus Christi, so T&T Offshore provided the crane that is normally stationed at the launch, a Tadano TR-600XL 60-ton Hydraulic Rough Terrain crane (a mobile crane). On that day, the crane would be

2

operated by T&T Offshore employee, Jeffrey Tinney. At some point that morning, Mr. Tinney attempted to lift a spool of wire without extending the outriggers, and the crane toppled over, striking and killing two temporary workers for Lightering. See Declaration of OSHA Area Director Mark Briggs attached as Exhibit H.

As part of its inspection, in November, 2017, OSHA attempted to interview Mr. Tinney, the crane operator involved in the accident. However, Mr. Tinney's attorney has informed OSHA that he is currently under the care of a doctor due to the stress of the incident and was in no condition to be interviewed. As a result, OSHA has not been able to interview Mr. Tinney. See Declaration of OSHA Area Director Mark Briggs attached as Exhibit H.

On December 7, 2017 and January 3, 2018, OSHA attempted to interview T&T Offshore's Safety Manager, Robbie Dison and T&T Offshore's General Manager, Philip Leasure, respectively. At the interviews, T&T Offshore was represented by the law firm of Fisher and Phillips, who counseled Mr. Dison and Mr. Leasure to invoke their rights under the 5th Amendment to refuse to respond any questions because the answers might incriminate them. Both Mr. Dison and Mr. Leasure invoked the 5th Amendment in response to every single question concerning their job duties, the circumstances surrounding the accident, and T&T Offshore's work practices. As a result, these two refused to provide even the most basic of information such as whether they worked for T&T Offshore, what the crane operator, Mr. Tinney, was doing at the time of the accident, and what training and work practices T&T Offshore had concerning the tasks being performed. See Declaration of OSHA Area Director Mark Briggs attached as Exhibit H.

Despite the fact that OSHA was unable to obtain any information from T&T Offshore's crane operator and the fact that the Safety Manager and General Manager refused to provide any

3

information, including the most basic information, to OSHA during their respective interviews, T & T Offshore continues to cite these information gathering opportunities in support of its argument that OSHA is overreaching in its attempts to speak with other employees. See, e.g., February 12, 2018 letter from T&T Offshore's counsel, Pamela Williams, demanding to know why OSHA needs additional information when "T&T Offshore, Inc. previously presented Mr. Robbie Dison and Mr. Phil Leasure for interviews at OSHA's Houston South Area Office." The letter is attached as Exhibit A.

These facts all highlight the need for OSHA to obtain the contact information for other employees of T&T Offshore, as well as the contact information for other crane operators who worked at the worksite, in order to be in a position to determine the type of safety and health program T&T Offshore has concerning cranes, including any training, work rules, and working conditions. See Declaration of OSHA Area Director Mark Briggs attached as Exhibit H.

On January 3, 2018, OSHA issued a Subpoena to T&T Offshore requesting four (4) classes of documents, namely (1) personnel records for crane operator, Mr. Tinney; (2) disciplinary records; (3) documents concerning Mr. Tinney's length of employment; and, (4) documents containing the contact information for other employees. The subpoena is attached as Exhibit B. OSHA hand delivered this subpoena at the conclusion of Mr. Leasure's interview to its counsel, Collin Warren, at the facility. Mr. Warren had previously represented to OSHA in an email exchange concerning the production of documents requested by OSHA: "I will be the contact person for T&T Offshore, Inc. from this point forward." The email is attached as Exhibit C.

On January 11, 2018, T&T Offshore responded to the subpoena by producing a list which contained the first names and last initial only for some, but not all, responsive employees. In

4

addition, T&T Offshore alleged, without any specific basis, that the subpoena was "defective in that it does not reference an OSHA inspection number and was not served in accordance with the applicable rules of procedure." The correspondence is attached as Exhibit D.

OSHA followed up on January 25, 2018 via letter notifying T&T Offshore of the need for the information. The letter is attached as Exhibit E. In response, on February 2, 2018, T&T Offshore produced "a document that was generated with information from its third-party payroll administrator;" containing a redacted list of some employees; however, T&T Offshore redacted last names and failed to provide any contact information, further hindering OSHA's ability to follow up with any if the listed individuals. The document is attached as Exhibit F.

On February 13, 2018, OSHA issued a second subpoena, essentially requesting the same information that was requested in the earlier subpoena. This subpoena, which is the subpoena at issue in this action, requested: "Any and all documents containing the names, job titles, addresses and telephone numbers of employees and supervisors working for T&T Offshore Inc. between September 20, 2016 and September 20, 2017, at the facility located at 2915 Todd Rd. Galveston, TX." This subpoena was hand delivered to Deborah T. Busby, Registered Agent for T&T Offshore, at the facility. The subpoena and the Proof of Service are attached as Exhibit A to the Petition. On February 16, 2018, Respondent provided an incomplete response, only providing the names and titles – but no contact information - for some, but not all, responsive employees. The letter is attached as Exhibit G.

OSHA has made multiple attempts to resolve this issue with Respondent, but Respondent has continuously refused to provide the documents requested in the subpoena duces tecum, specifically contact information for other employees of T&T Offshore who worked at the worksite in the time period leading up to the accident. Respondent's resistance to the subpoena

is impeding a lawful inspection and investigation by the Secretary. Time is of the essence, as the Secretary must conclude his investigation and issue any citations and notifications of penalty for any alleged violations of the Act and occupational safety and health standards by March 20, 2018, pursuant to section 9(c) of the Act, 29 U.S.C. §658(c). See Declaration of OSHA Area Director Mark Briggs attached as Exhibit H.

## ARGUMENT

### I. THE SECRETARY HAS THE STATUTORY AUTHORITY TO COMMAND THE PRODUCTION OF DOCUMENTS BY THE ISSUANCE OF AN ADMINISTRATIVE SUBPOENA DUCES TECUM.

After extensive investigation, Congress concluded in 1970 that work-related deaths and injuries had become a drastic national problem and that existing State statutory and common law remedies were inadequate to protect employees from death and injury due to unsafe working conditions. Atlas Roofing Co. v. OSHRC, 430 U.S. 442, 444-445 (1970).[1] Accordingly, Congress adopted the Occupational Safety and Health Act of 1970, 29 U.S.C. 651, et seq., "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and preserve our human resources." 29 U.S.C. 651(b).[2] Congress explicitly declared

---

[1] See Southern Ry. Co. v. OSHRC, 539 F.2d 335, 338 (4th Cir.), cert. denied, 429 U.S. 999 (1976), ("[The OSH Act] was enacted in response to an appalling record of death and disability in our industrial environment, and it was the clear intendment of Congress to meet the problem with broad and, hopefully, effective legislation."). The underlying legislative record showed that "each year 14,500 workers died and two million were disabled because of their jobs. . . ." See Brennan v. Gillis & Cotting, Inc., 504 F.2d 1255, 1259 (4th Cir. 1974).

[2] See Forging Indus. Ass'n v. Secretary of Labor, 773 F.2d 1436, 1447 (4th Cir. 1985) ("The basic purpose of the legislation is to assure a safe environment in our industries.").

6

that this must be accomplished, among other ways, "by providing an effective enforcement program. . . ." 29 U.S.C. 651(b)(10) (emphasis added).[3]

For the Secretary to conduct an effective enforcement program, he must determine whether safety and health hazards exist in the workplace.[4] Toward that end, the Act authorizes the Secretary to enter and inspect workplaces and to conduct reasonable investigations into workplace conditions. Section 8(a) of the Act grants the following authority to the Secretary of Labor:

> In order to carry out the purposes of this Act, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized -
> (1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
> (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee. 29 U.S.C. 657(a).

Congress recognized that to fully conduct these inspections and investigations, corresponding authority must be delegated to the Secretary to subpoena witnesses and evidence, "a power which is customary and necessary for the proper administration and regulation of an

---

[3] See McLaughlin v. A. B. Chance Co., 842 F.2d 724, 727 (4th Cir. 1988) ("[I]t is obvious that Congress intended a strong inspection enforcement scheme to fulfill the purposes of the Act."); George Hyman Constr. Co. v. OSHRC, 582 F.2d 834, 838 (4th Cir. 1978) ("An agency has wide latitude in setting up an enforcement scheme that will best serve the convenience of the agency as long as the scheme is a rational one in light of the statute's overall purpose.").

[4] Section 29 of the Act provided for the creation of an additional Assistant Secretary of Labor for Occupational Safety and Health. 29 U.S.C. 678. The Secretary of Labor has delegated his responsibilities under the Act to this Assistant Secretary who directs the Occupational Safety and Health Administration ("OSHA"). In this memorandum, the terms "Secretary" and "OSHA" are used interchangeably.

7

occupational safety and health statute." Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92 Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970, at 852 (Comm. Print 1971).

An administrative agency does not have subpoena power unless so authorized by statute. United States v. Allis-Chalmers Corp., 498 F.Supp. 1027, 1028 (E.D.Wisc. 1980). Congress therefore granted the Secretary subpoena power under the Act to require the attendance and testimony of witnesses and the production of evidence. Further, Congress granted jurisdiction to this Court to compel compliance with the Secretary's subpoena. Section 8(b) of the Act authorizes the Secretary as follows:

> In making his inspections and investigations under this Act the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath. Witnesses shall be paid the same fees and mileage that are paid witnesses in the courts of the United States. In case of a contumacy, failure, or refusal of any person to obey such an order, any district court of the United States or the United States courts of any territory or possession, within the jurisdiction of which such person is found, or resides or transacts business, upon the application of the Secretary, shall have jurisdiction to issue to such person an order requiring such person to appear to produce evidence if, as, and when so ordered, and to give testimony relating to the matter under investigation or in question, and any failure to obey such order of the court may be punished by said court as a contempt thereof. 29 U.S.C. 657(b).

The Secretary and the Director of the National Institute of Occupational Safety and Health ("NIOSH")[5] have been found by the courts to have subpoena power pursuant to this specific grant of authority by Congress found in section 8(b) of the Act. Donovan v. Union

---

[5] Pursuant to section 22 of the Act, 29 U.S.C. 671, the National Institute for Occupational Safety and Health ("NIOSH"), was created to serve as the occupational health and safety research mechanism for OSHA. See United States v. Amalgamated Life Ins. Co., 534 F.Supp. 676, 677 n. 2 (S.D.N.Y. 1982); United States v. McGee Industries, 439 F. Supp. 296, 297 (E.D. Pa. 1977). Case law cited regarding the enforcement of subpoenas issued by NIOSH is relevant here because NIOSH's subpoena power was conferred by section 8(b) of the Act, the very same statutory provision that authorizes OSHA to issue subpoenas.

8

Packing Co. of Omaha, 714 F.2d 838 (8th Cir. 1983); United States v. Westinghouse Electric Corp., 483 F.Supp. 1265 (W.D. Pa. 1980), aff'd 638 F.2d 570 (3rd Cir. 1980); General Motors Corp. v. Director of N.I.O.S.H., 459 F.Supp. 235 (S.D. Ohio), 636 F.2d 163 (6th Cir. 1980); Marshall v. American Olean Tile Co., 489 F.Supp. 32 (E.D. Pa.), aff'd mem., 636 F.2d 1209 (3rd Cir. 1980); United States v. Allis Chalmers Corp., 498 F.Supp. 1027 (E.D. Wisc. 1980); E. I. du Pont de Nemours & Co. v. Finklea, 442 F.Supp. 821 (S.D. W.Va.1977); United States v. McGee Industries, 439 F.Supp. 296 (E.D. Pa.), aff'd mem., 568 F.2d 771 (3rd Cir. 1978).

Thus, it is clear that the Secretary has the authority to issue the administrative subpoena. As discussed below, the Secretary has met all of the criteria for the issuance of his subpoena. Accordingly, the subpoena should be enforced by requiring Respondent to provide OSHA with the requested documents.

## II.  THE SECRETARY HAS SATISFIED THE REQUIREMENTS FOR DISTRICT COURT ENFORCEMENT OF AN ADMINISTRATIVE SUBPOENA.

The district court is required to enforce an administrative subpoena for the production of documents not found to be "plainly incompetent" or "irrelevant" to the statutory purpose under which it was issued. Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 343 (1943); See also Marshall v. American Olean Tile Co., supra, 489 F.Supp. at 33; United States v. McGee Industries, Inc., supra, 439 F.Supp. at 298.

Although the Act does not expressly state specific standards or criteria to be used by the district courts in determining the validity or enforceability of an administrative subpoena, applicable standards have been firmly established by the courts with respect to subpoenas issued pursuant to section 8(b) of the Act and comparable administrative subpoena statutes. An administrative subpoena issued in connection with a governmental investigation and pursuant to

9

an agency's investigatory power is proper, and must be judicially enforced, if (1) the inquiry is within the scope of the authority of the agency; (2) the demand is not too indefinite; and, (3) the information sought is reasonably relevant to the authorized inquiry. United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 369 (1950), citing Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494 (1946). In Oklahoma Press, supra, the Supreme Court examined whether a subpoena duces tecum issued by the Secretary in connection with an investigation made pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. '201, et seq., was enforceable. The Supreme Court held:

> It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command. This has been ruled most often perhaps in relation to grand jury investigations, but also frequently in respect to general or statistical investigations authorized by Congress. The requirement of "probable cause, supported by oath or affirmation" liberally applicable in the case of the warrant is satisfied, in that of an order for production, by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in "describing the place to be searched, and the persons or things to be seized," also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry.

Id., 327 U.S. at 209, 66 S.Ct. at 505-06. See Dole v. Trinity Indus., 904 F.2d 867, 871 (3rd Cir. 1990) (applying Morton Salt criteria to subpoenas issued under section 8(b) of the Act for the production of employer's reports of occupational injuries); Donovan v. Union Packing Co., 714 F.2d 838, 840 (8th Cir. 1983) (same).[6] See also discussion, supra, of the broad grant of subpoena power under section 8(b) of the Act.

---

[6] Accord United States v. Westinghouse Electric Co., supra, 483 F.Supp. at 1270, 638 F.2d at 574; Martin v. Hammermill Paper Div., Int'l Paper Co., 796 F.Supp. 1474, 1475 (S.D. Ala.

The Fifth Circuit has recognized and followed the approach of the Supreme Court in enforcing administrative subpoenas. In Winters Ranch Partnership v. Viadero, the Fifth Circuit stated:

> When called upon to enforce an administrative subpoena, a court's role is limited to evaluating whether (1) the subpoena was issued for a lawful purpose within the statutory authority of the issuing agency; (2) the documents requested are relevant to that purpose; and (3) the subpoena demand is reasonable and not unduly burdensome. 123 F.3d 327, 329 (5th Cir. 1997)(citations omitted).

There are no additional requirements for the enforcement of an administrative subpoena issued pursuant to the Occupational Safety and Health Act. See Marshall v. American Olean Tile Co., supra, 489 F.Supp. at 33; United States v. McGee Industries, Inc., 439 F.Supp. at 299. As discussed below, the administrative subpoena duces tecum issued by the Secretary to Respondent in the present proceeding satisfies the specific criteria established by the Supreme Court in Morton Salt, supra, and its progeny, for enforcement.

### A. The inquiry made in the administrative subpoena is within the scope of the authority of the Secretary.

The scope of the authority of the Secretary under the Occupational Safety and Health Act, as enumerated by Congress, includes "authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce," "providing for the development and promulgation of occupational safety and health standards," and "providing an effective enforcement program." 29 U.S.C. 651(b). Thus, Congress granted the Secretary broad authority under the Act to perform both a legislative function, relating to the development and promulgation of occupational safety and health standards, as well as an enforcement function, related to employer compliance with the Act and the occupational safety

---

1992); Brock v. Packer, 620 F.Supp. 22, 24 (N.D. Ill. 1985); Marshall v. American Olean Tile Co., supra, 489 F.Supp. at 33; United States v. Allis-Chalmers Corp., supra, 498 F.Supp. at 1029.

11

and health standards promulgated pursuant to the Act. As stated by the court in <u>Marshall v. American Olean Tile Co.</u>, <u>supra</u>, "[i]f the information requested is relevant to any of the Secretary's functions and its production is not unduly burdensome, the subpoena should be enforced." 489 F.Supp. at 34.

In this case, the Secretary is engaged in the exercise of his enforcement function under the Act as determined by an inspection and investigation initiated pursuant to section 8(a) of the Act. The Secretary is conducting an inspection and investigation through his delegated representative, OSHA, of a multi-employer worksite related to the conditions identified in a fatal accident. Pursuant to sections 9(a) and 10(a) of the Act, the Secretary is required to issue citations and propose the assessment of penalties where it is determined that hazardous conditions exist at the worksite and such conditions violate the Act and the mandatory occupational safety and health standards promulgated pursuant to the Act. 29 U.S.C. 658(a) and 659(a).

In <u>Marshall v. American Olean Tile Co.</u>, <u>supra</u>, the district court examined the scope of the Secretary of Labor's authority to issue a subpoena under section 8(b) of the Act in view of the requirements of <u>Morton Salt</u>, <u>supra</u>. The court stated:

> The varied responsibilities delegated to the Secretary define the breadth of his subpoena power. In 29 U.S.C. Section 657(a)(1) Congress authorized inspections and investigations "in order to carry out the purposes of this chapter." The statute supplements this authority by stating that "(i)n making his inspections and investigations under this chapter the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath." 29 U.S.C. Section 657(b). Therefore the scope of the subpoena power is based upon the investigations which in turn depend upon "the purposes of this chapter".

489 F.Supp. at 34. The court found that the Act authorized the Secretary to issue subpoenas in pursuit of any of the Secretary's statutory functions, including inspections and investigations "designed to explore the causes and prevention of occupational illnesses." *Id.*

OSHA's current inspection of Respondent, T&T Offshore's worksite is being conducted as part of OSHA's enforcement function, for the purpose of identifying any hazardous conditions at the worksite and determining whether such conditions violate the Act and its implementing regulations. The documents sought through the administrative subpoena, specifically documents containing the contact information for T&T Offshore's employees who worked at the worksite are to assist in the Secretary in his pursuit of this statutory function and, indeed, are vital to the inspection. Thus, the Secretary has clearly met the first Morton Salt Co. requirement—as the inquiry in the administrative subpoena is within the scope of the authority of the Secretary

**B.     The Secretary's request for production of documents is not indefinite or overly broad.**

The Secretary's subpoena duces tecum requests the production of specific documents relating to T&T Offshore's employee occupational safety and health related training and programs at the inspected worksite. Specifically, the subpoena requests the "the contact information for employees and supervisors working for T&T Offshore Inc. between September 20, 2016 and September 20, 2017, at the facility located at 2915 Todd Rd. Galveston, TX."

The Secretary's subpoena is expressly limited in time, scope and location, and sufficiently lists, identifies, and describes the documents being sought to satisfy the "definiteness" element of Morton Salt Co., supra. In fact, there is no question that Respondent understands what documents OSHA is requesting, as they have provided OSHA with redacted

13

versions of some of the documents sought.[7] The subject matter of the documents sought by the subpoena is not unreasonably broad or indefinite, and it would not be burdensome for the company to provide OSHA with the documents.

### C. The information sought is reasonably relevant to the Secretary's authorized inquiry.

The relevance of information sought by an administrative subpoena is interpreted extremely broadly. It is enough that the information is relevant to *any* inquiry the agency is authorized to make. Dole v. Trinity Industries, 904 F.2d 867, 872 (3rd Cir. 1990), citing United States v. Morton Salt Co., supra; Endicott Johnson v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 343 (1943). The Supreme Court in Morton Salt characterized the breadth of administrative subpoena power as the power of "original inquiry":

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law (emphasis added).

United States v. Morton Salt, supra, 338 U.S. at 642-43, 70 S.Ct. 364. It is sufficient that the material subpoenaed "touches a matter under investigation" in order to satisfy the relevancy requirement. N.L.R.B. v. Rohlen, 385 F.2d 52, 57 (7th Cir. 1967). See also Sandsend Financial

---

[7] As addressed in more detail below, the party opposing the enforcement of a subpoena bears the burden of establishing that the subpoena is unduly burdensome and should not be enforced. EEOC v. Children's Hosp. Med. Center of Northern California, 719 F.2d 1426, 1428 (9th Cir. 1983).

14

Consultants v. Federal Home Loan Bank Bd., 878 F.2d 875, 882 (5th Cir. 1989); E.E.O.C. v. Elrod, 674 F.2d 601, 613 (7th Cir. 1982); Motorola v. McLain, 484 F.2d 1339, 1344-46 (7th Cir.), cert. denied 416 U.S. 936, 94 S.Ct. 1935 (1974).

Further, a challenge to an administrative subpoena on relevancy grounds must demonstrate that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of its investigation. United States v. R. Enterprises, 111 S.Ct. 722, 728 (1991). This principle has been explained as follows:

> [I]n the pre-complaint stage, an investigating agency is under no obligation to propound a narrowly focused theory of a possible future case. Accordingly, the relevance of the agency's subpoena requests may be measured only against the general purposes of its investigation.

F.T.C. v. Texaco, 555 F.2d 862, 874 (D.C. Cir.), cert. denied, 431 U.S. 974 (1977). See also Dole v. Trinity Industries, Inc., 904 F.2d 867, 874 (3rd Cir. 1990) ("[The Secretary] is authorized to review the occupational health and safety records that employers are required by the Act for her to use. . . .")

In the instant case, the subpoenaed documents are relevant to the investigation. As noted above, the ongoing investigation is related to an accident in which a crane operated by a T&T Offshore employee toppled, killing two other employees. There is no question that the contact information for T&T Offshore's other employees who worked at the worksite in the days, weeks and months leading up to the accident, including other crane operators, are relevant to such an inspection. The fact that these other employees may not have been present at the time of the accident does not mean that information they could provide is irrelevant to OSHA's inspection or to T&T Offshore's work practices at the site.

### D. Respondent Has Not and Cannot Demonstrate that the Subpoena Is Unduly Burdensome

15

The Secretary has satisfied all three requirements of the Morton Salt test. As such, the Court must enforce the subpoena unless Respondent can demonstrate that it is unduly burdensome. E.E.O.C. v. Maryland Cup, 785 F.2d 471, 476 (4th Cir. 1986), cert denied, 479 U.S. 815 (1986). The burden to demonstrate that compliance with the subpoena would be unduly burdensome rests with Respondent. To demonstrate that a request is unduly burdensome, an employer must demonstrate that Acompliance will unduly disrupt or seriously hinder normal business operations. E.E.O.C. v. Citicorp Diners Club, Inc., 985 F. 2d 1036, 1040 (10th Cir. 1996)(an allegation that it would take six months and two employees working full time on request insufficient to establish that request was unduly burdensome). See also NLRB v. Carolina Food Processors, 81 F.3d 507, 513 (4th Cir. 1996); E.E.O.C. v. Maryland Cup, 985 F. 2d at 479 (where company did not show that gathering information was unduly burdensome in light of its normal operating costs, or would threaten its normal business operations, court enforced subpoena requesting payroll and personnel summary cards for five years, documents describing job applicants' race, sex, testing and interviewing results, documents describing corporate training programs, and a list of all persons hired for five years identified by sex and race); *see also* N.L.R.B. v. G.H.R. Energy Corp., 707 F.2d 110 (5th Cir. 1982) (mere fact that subpoenas may require production of thousands of documents is insufficient to establish that subpoena is unduly burdensome).

Respondent cannot demonstrate that providing OSHA with the requested documents would be unduly burdensome. The request does not require T&T Offshore to create any documents, not does it require T&T Offshore to produce voluminous documents. To the contrary, a single document from each employee's personnel file should contain his or her contact information. In fact, on February 2, 2018, T&T Offshore produced "a document that was

16

generated with information from its third-party payroll administrator." Even though T&T Offshore redacted last names and failed to provide any contact information, further hindering OSHA's ability to follow up with any if the listed individuals, this production demonstrates that there is no question that Respondent has convenient access to these documents, and providing OSHA with the documents would in no way disrupt or seriously hinder Respondent's normal business operations.

## CONCLUSION

As demonstrated above, the Secretary's subpoena is authorized pursuant to section 8(b) of the Act, it is not too indefinite or overly broad, and it is reasonably relevant to the Secretary's inquiry authorized pursuant to section 8(a) and 8(c) of the Act. Further, it is not unduly burdensome. Thus, it should be enforced by the Court.

The Secretary respectfully requests that the Court order Respondent, T&T Offshore, to appear at a hearing in this proceeding, and show cause why an order compelling it to produce documents requested in the Secretary's administrative subpoena duces tecum should not be entered.

Respectfully Submitted,

KATE S. O'SCANNLAIN
Solicitor of Labor

JAMES E. CULP
Regional Solicitor

MADELEINE T. LE
Counsel for Occupational Safety and Health

By:

_____
JOSH BERNSTEIN
Texas Bar No. 00793335
Trial Attorney
Attorneys for Complainant.

United States Department of Labor
Office of the Solicitor
525 S. Griffin Street, Suite 501
Dallas, Texas 75202
Telephone: (972) 850-3100
Facsimile: (972) 850-3101
Email: bernstein.josh@dol.gov

RSOL Case No. 0660-18-00371

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing was served upon all parties, representatives, and attorneys in the above entitled and numbered cause via email addressed to:

Travis W. Vance
Fisher & Phillips LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
tvance@fisherphillips.com

Certified this 13 day of March, 2018.

_____
JOSH BERNSTEIN