UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, § | | |
| Secretary Of Labor, United § | | |
| States Department of Labor, § | | |
|     Petitioner, § | | |
| V. § | CIVIL ACTION NO. 3:18-CV-73 | |
| § | | |
| T&T Offshore, Inc. § | | |
|     Respondent. § | | |

### RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA DUCES TECUM ISSUED BY THE OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION

The Court should deny the Petition of the U.S. Secretary of Labor (Secretary) to enforce the administrative subpoena issued by the United States Department of Labor, Occupational Safety and Health Administration (OSHA), on February 13, 2018 because the subpoena is both procedurally and substantively defective and is nothing more than a fishing expedition for which no coherent basis has been set forth. Specifically, the subpoena was never properly served on T&T Offshore, Inc. ("T&T Offshore") OSHA failed to follow its own basic procedural guidelines regarding issuing the subpoena, and the subpoena is ambiguous, overbroad, unduly burdensome, and seeks information outside the scope of OSHA's inspection in this matter. T&T Offshore also should be awarded its costs and attorneys' fees in defending this frivolous subpoena.

### Background

OSHA is conducting an inspection, Inspection No. 1265193, regarding an accident that occurred at T&T Offshore's worksite on Pelican Island, Texas, near Galveston on September 20, 2017. The accident also has resulted in a criminal investigation by the Galveston County District Attorney's Office.

1

### A. T&T Offshore has cooperated fully with OSHA's investigation.

T&T Offshore has cooperated fully with OSHA's inspection. Since September 2017, T&T Offshore has provided OSHA with hundreds of pages of relevant documents related to the incident, including its safety and health policies, personnel information related to the operator of the crane involved in the accident, and other information. Whenever OSHA has requested specific information that is relevant to its investigation of the accident, T&T Offshore has provided that information.

T&T Offshore also has made available for interview multiple employees who may have knowledge regarding the accident to OSHA. On September 25, 2017, T&T Offshore, through counsel, provided the contact information of the crane operator involved in the accident, Jeffrey Tinney. (Doc. No. 2-3.). The Secretary admits that OSHA attempted to interview Mr. Tinney. (Doc. No. 2-8 at ¶ 5.) The Secretary admits that, on December 7, 2017, OSHA interviewed T&T Offshore's Safety Manager, Robbie Dison. (*Id.* at ¶ 6.) The Secretary admits that, on January 3, 2018, OSHA interviewed T&T Offshore's General Manager, Philip Leasure. (*Id.*) Ironically, the Secretary, an officer sworn to uphold the U.S. Constitution, complains that Mr. Dison and Mr. Leasure invoked their constitutional Fifth Amendment right not to testify against themselves. In complaining that Mr. Dison and Mr. Leasure exercised their constitutional rights, the Secretary not only incorrectly believes that the Fifth Amendment can be invoked selectively—the Secretary complains that both individuals refused to answer all questions—but also incorrectly identifies Fisher & Phillips LLP as the attorneys who counseled the witnesses to invoke their rights. (*Id.*) Specifically, this latter charge is based upon a Declaration sworn under penalty of perjury by OSHA's Area Director, Mark Briggs, in which he declared that Fisher & Phillips counseled Mr. Dison and Mr. Leasure to invoke their constitutional rights. (*Id.*) Mr. Briggs was not present for

2

either interview and therefore has no personal knowledge regarding what occurred. In fact, OSHA had been advised on November 17, 2017, that T&T Offshore had retained separate criminal counsel, George J. Parnham. **Exhibit A.** Mr. Brigg's false Declaration therefore is inexplicable.

Additionally, T&T Offshore provided OSHA the opportunity to interview the vessel captains who may have operated the crane at issue during the thirty day period prior to the accident: Matt Sharp, Charlie Bright, Frank Kubin, Dave Copeland, Paul Stepien, and Christopher Sobanja (in addition to Mr. Tinney). OSHA interviewed Matt Sharp, Charlie Bright, Frank Kubin, and Dave Copeland on March 9, 2018. However, OSHA declined to interview Paul Stepien and Christopher Sobjana.

T&T Offshore is not aware of any other individuals whom it employs that may have any knowledge pertinent to OSHA's investigation over which OSHA has jurisdiction.

**B. OSHA "issues" its first crude attempt at a subpoena to T&T Offshore, and T&T Offshore makes a good faith effort to respond.**

On January 3, 2018, OSHA provided a document that claimed to be a subpoena to counsel for T&T Offshore. (Doc. No. 2-2.) Among other things, the subpoena sought "Any and all documents showing the names, job titles, addresses and/or telephone numbers of employees working for T&T Offshore Inc. between September 20, 2016 and September 20, 2017. Such document(s) need only show employees reporting to work at the facility." (*Id.*) OSHA, through Assistant Area Director Jim Lawrence, subsequently represented to T&T Offshore that it sought this information to determine the total number of individuals at the facility.

Even though counsel for T&T Offshore had never agreed to accept service of the subpoena on behalf of the company, and therefore the subpoena was a legal nullity, the company responded to the subpoena in a good faith effort to continue to provide OSHA with all requested relevant and non-privileged information related to the inspection. (Doc. No. 2-4.) Notably, T&T Offshore

3

provided more than 400 pages of documents in response to a request for Mr. Tinney's personnel records. (*Id.*) In response to the request for the contact information of all of its employees, T&T Offshore raised several objections, noting that the request was vague, ambiguous, overbroad, unduly burdensome, and sought to expand the scope of OSHA's inspection impermissibly. (*Id.*) In particular, it is not clear whether OSHA sought a single document with the information of its employees, or whether it sought *all* documents showing *any* of the information—a vast quantity of documents that spans every aspect of the company's business operations for the year in question. T&T Offshore responded to this request by noting that "no such documents containing the above information have been identified." (*Id.* at 3.) Additionally, T&T Offshore provided OSHA with a list of its employees who were present at the worksite at the time of the incident. (*Id.* at 3-4.)

Unsatisfied with T&T Offshore's fulsome response to OSHA's sloppily worded and procedurally defective and null subpoena, OSHA sent the company a harassing letter on January 25, 2018, in which it threatened legal action if the company did not provide unspecified additional documents and *things* allegedly responsive to the subpoena. (Doc. No. 2-5.) OSHA also threatened to bring an enforcement action in this Court and to seek attorneys' fees against T&T Offshore, even though it does not incur attorneys' fees for its retained and salaried, non-billing attorneys. (*Id.*) OSHA also requested that if T&T Offshore "has no documents responsive to the request, please specify so." (*Id.*)

T&T Offshore attempted to resolve OSHA's confounding concerns by letter dated February 2, 2018. (Doc. No. 2-6.) In the letter, T&T Offshore noted that it had provided OSHA with documents relevant to the inspection and that it "remain[ed] willing to discuss any issue you may have relative to this inspection at your convenience." (*Id.* at 1.) T&T Offshore reiterated that it had produced all relevant and responsive documents that OSHA has requested and that *no*

4

*documents exist* in response to the request for a document containing the contact information for all of T&T Offshore's employees for a specific one year period. (*Id.* at 2.)

  **C. OSHA "issues" a new subpoena that suffers the same defects as the first subpoena; T&T Offshore again attempts to resolve the issue in good faith.**

Rather than engage with T&T Offshore in an attempt to resolve the matter, OSHA sent a new subpoena *duces tecum* to T&T Offshore on February 13, 2018. (Doc. No. 1-1.) Inexplicably, OSHA failed to properly serve the subpoena on T&T Offshore, instead having its own Certified Safety and Health Official (CSHO) "serve" the subpoena, (*id.* at 3), and failed to change the vague wording of the subpoena despite T&T Offshore previously objecting to the same wording. (*Id.* at 2.) Specifically, the subpoena seeks: "Any and all documents containing the names, job titles, addresses and telephone number of employees and supervisors working for T&T Offshore Inc. between September 20, 2016 and September 20, 2017, at the facility located at 2915 Todd Rd. Galveston, TX." (*Id.*)

T&T Offshore responded to the February 13 subpoena by letter dated February 16, 2018. (Doc. No. 2-7.) While continuing to note its objections to the subpoena, T&T again attempted in good faith to satisfy OSHA's request for information by providing "the names and positions of the T&T Offshore, Inc. employees who were on site at the Pelican Island facility on the day of the incident, regardless of whether they had any connection to the work or work place at the time of the incident." (*Id.* at 3.)

In response to the letter, OSHA then demanded—contrary to the language of the subpoena—that T&T Offshore provide the contact information of the employees on the list who were not involved in the accident as well as the contact information for a crane operator who was allegedly working in *Corpus Christi, not Galveston*. **Exhibit B [email chain of 2/23/18 at 4:17 pm from Williams to Bernstein to 2/20/18 12:54 email from Bernstein to Vance and**

5

**Williams]**. In response, T&T Offshore noted that it had no crane operators in Corpus Christi at the time of the incident and that it was not aware of any legal authority that provides that, in an accident-based inspection, OSHA can require employers to provide the contact information for individuals who were not involved in the accident, not involved in the work at the time of the accident, not employed by T&T Offshore, and were not even in Galveston, Texas at the time of the accident in Galveston. *Id.* OSHA never provided any legal authority for its position, never made a telephone call to discuss the subpoena prior to threatening an unfounded enforcement action, and never modified the subpoena in any fashion. *Id.*

   **D. OSHA files this frivolous enforcement action.**

OSHA initially threatened to seek enforcement of its January 3, 2018 subpoena more than six weeks ago. OSHA never explained to T&T Offshore why it believed it needed the contact information for all of its employees for a one year period for an accident-based investigation occurring at a specific location. Rather, the Secretary waited until March 13, 2018—seven days before its statute of limitations runs to issue a citation to T&T Offshore under the Occupational Safety and Health Act of 1970—to file this frivolous enforcement action of a procedurally and substantively defective subpoena in which the Secretary alleges the information sought is "essential" to his investigation. (Doc. No. 3 at 2.) The closing conference between OSHA and T&T Offshore, however, occurred on March 15, 2018, clearly indicating that OSHA does not view the information sought as essential.

<u>**Argument**</u>

The Court should dismiss the Petition because the subpoena at issue is procedurally defective and substantively defective, the subpoena is invalid under Supreme Court precedent, and because T&T Offshore has complied with the subpoena as properly understood.

### A. The subpoena is procedurally defective and a legal nullity.

The subpoena is procedurally defective because it was never served on T&T Offshore and because OSHA failed to follow its own policies regarding issuance of subpoenas.

While the statute granting OSHA authority to issue administrative subpoenas, 29 U.S.C. § 657(b), does not set forth any procedures for issuance of such subpoenas, and no regulations or other rules set forth any procedures for issuance, no court in the country, to T&T Offshore's knowledge, permits a party to serve its own subpoena. For example, Federal Rule of Civil Procedure 4(c)(2), which guides service of subpoenas in matters before this Court, provides that "[a]ny person who is at least 18 years old *and not a party* may serve a summons and complaint." (emphasis added). Similarly, Fed. R. Civ. P. 45(b)(1), regarding subpoenas *duces tecum*, provides that only non-parties may serve subpoenas. Texas's Rules of Civil Procedure provide the same bar to allowing parties to serve subpoenas. Tex. R. Civ. P. 176.5(a).

Here, the person who "served" the subpoena was OSHA's CSHO—that is, an agent of the party issuing the subpoena. Because a party cannot serve a subpoena, the subpoena that the Secretary seeks to enforce is a legal nullity and cannot be enforced by this Court.

Additionally, the Secretary failed to follow its own policies regarding the subpoena. The procedures that the Secretary has chosen to fulfill the grant of authority to issue administrative subpoenas are set out in OSHA's Field Operations Manual (FOM), which OSHA must comply with. **Exhibit C**. Under the FOM, subpoena authority is vested in the Regional Administrator for OSHA, who may, in very limited circumstances, delegate that authority to Area Directors. FOM at 15-1. Specifically, Area Directors only have authority to issue subpoenas for records "relevant to an inspection or investigation," including four specific, identified types of records: (1) injury and illness records; (2) hazard communication program records; (3) lockout/tagout program

records; and (4) safety and health program records. FOM at 15-1 through 15-2. When a subpoena is issued, OSHA must "explain the reason for the request." *Id.* at 15-2. Personal service of the subpoena is required, and a compliance time of five working days must be provided for documents that are not required to be kept by statute or regulation. *Id.* at 15-3 through 15-4.

Here, the subpoena lacks legal validity because the Area Director illegally issued the subpoena. The records sought in the subpoena—documents containing the contact information of all of T&T Offshore's employees—is in no way relevant to OSHA's inspection and is not one of the four specific categories of documents for which the Area Director can issue a subpoena. Moreover, OSHA never served the subpoena on T&T Offshore and failed to provide it with five working days to respond. Accordingly, the subpoena is a nullity and should be quashed.

**B. The subpoena is substantively defective.**

The subpoena also is substantively defective because it is ambiguous, overly broad, and unduly burdensome.

The subpoena is ambiguous, as it is unclear whether OSHA is requesting a *single* document containing the "names, job titles, addresses[,] and telephone numbers of" T&T Offshore's employees for a one year period from September 20, 2016 through September 20, 2017, at the facility located at 2915 Todd Rd. Galveston, TX," or whether it is requesting *all* documents containing *any* of that information. OSHA's Assistant Area Director has told T&T Offshore that the former interpretation is correct—that OSHA is seeking a single document containing all of the requested contact information. Based on this representation, T&T Offshore has told OSHA several times that no such document exists. Moreover, T&T Offshore has no obligation to create a document that does not exist, as requiring document creation imposes an undue burden on the

8

employer.  *See* 29 U.S.C.A. § 657(d) ("Any information obtained by the Secretary" under 29 U.S.C.A. § 657 "shall be obtained with a minimum burden upon employers.").

If the subpoena requests the latter category of documents, the request is grossly overbroad and unduly burdensome, as it would require production of nearly all documents that T&T Offshore possesses for the specified year for its work at the Galveston, Texas worksite.  Additionally, courts have repeatedly held that requests seeking "any and all" documents are facially overbroad.  *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) ("Blanket requests of this kind are plainly overbroad and impermissible.") (citing *Gropper v. David Ellis Real Estate, L.P.,* No. 13–CV–2068 (ALC)(JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (finding that a "request for 'any and all' documents . . . is inherently overbroad"); *Rice v. Reliastar Life Insurance Co.,* No. 11–CV–44 (BAJ)(CN), 2011 WL 5513181, at *2 (M.D.La. Nov. 10, 2011) (finding that "a request for 'any and all documents' relating to a particular subject is overbroad and amounts to little more than a fishing expedition"); *Badr v. Liberty Mutual Group, Inc.,* No. 06–CV–1208, 2007 WL 2904210, at *3 (D.Conn. Sept. 28, 2007) (finding request for "any and all" documents "overly broad")).

The subpoena also seeks irrelevant and private personal information that goes well beyond the scope of OSHA's inspection.  Seeking information regarding all of T&T Offshore's employees at the Galveston worksite serves no connection to the investigation, incident, and work related to the inspection.  Moreover, T&T Offshore has previously provided OSHA with a list of its employees who were present at the Pelican Island facility at the time of the incident, even though T&T Offshore was under no obligation to do so, and has permitted OSHA to interview its vessel captains who may have operated cranes at the worksite within thirty days of the accident.  Because OSHA has continued to seek additional information that has no bearing on its inspection, the

obvious and only conclusion that can be reached is that OSHA is permissibly attempting to expand the scope of its inspection.

Accordingly, because the subpoena is also substantively defective, the Court should quash the subpoena.

### C. The subpoena is invalid under the *Morton Salt* test.

The subpoena should not be enforced if the Court applies the *Morton Salt* test to this case.

In *U.S. v. Morton Salt Co.*, the Supreme Court held that administrative subpoenas are proper only if they meet three conditions: "[1] the inquiry is within the authority of the agency, [2] the demand is not too indefinite and [3] the information sought is reasonably relevant." 338 U.S. 632, 652 (1950). "The gist of the protection is in the requirement . . . that the disclosure sought shall not be unreasonable." *Id.* at 652-53. However, "a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *Id.* at 652.

Applying these elements to the administrative subpoena here, the subpoena's demand fails all three elements. Most fundamentally, it is outside the scope of the Secretary's authority. The Fourth Amendment's prohibition on unreasonable searches applies to Secretary's authority to investigate alleged or potential violations of the OSH Act. Where the Secretary attempts to expand an accident-based investigation into a so-called "wall-to-wall" inspection of the employer's worksite, unless it obtains the employer's consent it must obtain probable cause. *See Donovan v. Sarasota Concrete*, 693 F.2d 1061, 1069-70 (11th Cir. 1982) (concluding that the "scope of [OSHA's proposed] inspection (the degree of intrusiveness) was not supported by probable cause"); *In the Matter of the Establishment Inspection of Mar-Jac Poultry, Inc.*, No. 2:16-mc-004, 2016 WL 8938586 (N.D. Ga. Aug. 5, 2016) (quashing warrant and recognizing that OSHA's

10

presentation of evidence falls short of the probable cause required to inspect an entire facility for a specific violation). Just as a wall-to-wall onsite inspection is a search within the meaning of the Fourth Amendment, so too is an administrative subpoena derived from the same authority; issuing an administrative subpoena is not an end-run around the employer's legitimate and well-recognized privacy interest in not having the government search its business on a lark. The subpoena at issue here seeks information well beyond the scope of the accident-based investigation that the Secretary is conducting because it seeks information regarding employees who have no connection whatsoever to the accident. Much as a showing of evidence is required to establish probable cause for a warrant, *see Marshall v. Horn Seed Co.*, 647 F.2d 96, 103 (10th Cir. 1981), the Secretary must come forward with evidence establishing that he needs the information the subpoena seeks for some lawful purpose. Because he has failed to do so, the subpoena is invalid.

The subpoena also is too indefinite to be enforceable. The subpoena is indefinite for the same reasons it is ambiguous: it is not clear whether it seeks a *single* document containing *all* of the contact information or *every* document containing *some* of the contact information of the individuals identified. As recognized by the Seventh Circuit:

> The need for appropriate specificity and limitations is greatest when the Secretary seeks documents and records of the employer. Very few, if any, reported violations would justify OSHA personnel's rummaging through the entire files of a company in order to determine what, if any, information pertinent to the employee complaints might be found.

*Donovan v. Fall River Foundry Co., Inc.*, 712 F.2d 1103, 1111 (7th Cir. 1983). Here, the subpoena lacks the specificity required to determine what documents the Secretary seeks.

Additionally, the information sought in the subpoena is not reasonably relevant to OSHA's inspection. *Id.* ("The Secretary has an obligation to limit its inspection of documents to those that bear some clear relevance to the conditions about which complaints have been received."). The

11

subpoena seeks information about employees who were not involved in the accident, did not witness the accident, and did not work at the worksite at the time of the accident. In fact, T&T Offshore has made available for interview the other vessel captains who may have operated a crane at the worksite in the thirty days preceding the accident, and *OSHA conducted some of those interviews while declining to proceed with the others*. T&T Offshore also made available the crane operator at the time of the accident, its Safety Manager, and its General Manager, and *OSHA conducted interviews of them, too*.

Indeed, the Secretary has never provided in any substantive basis for why it needs the information sought. Rather, he has provided a moving target for what is being sought. First, Assistant Area Director Lawrence informed T&T Offshore that OSHA only sought a list of employees so it could determine the total number of employees at the site. Then, OSHA informed T&T Offshore that it was also seeking the identity of a crane operator in Corpus Christi, even though the subpoena's language is limited to Galveston. While OSHA has dithered for two months after it first requested information regarding T&T Offshore's employees, it now informs the Court, on the eve of the statute of limitations period running and two days—*two days*—before the Closing Conference occurred—that it is essential—*essential*—that it have the information sought. Clearly, the information is not essential to OSHA's investigation and is nothing more than a boggled fishing expedition to explore T&T Offshore's business operations.

Accordingly, the subpoena is not enforceable under the standard set forth in *Morton Salt*.

**D. T&T Offshore has complied with the subpoena.**

The Court should dismiss the Petition because T&T Offshore has in fact complied with the subpoena as written and interpreted by OSHA. Based upon Assistant Area Director Lawrence's representation that OSHA was seeking a list of employees so that it could determine the total

number of employees at T&T Offshore's worksite in Galveston, T&T Offshore responded to the subpoena by stating that no single document exists containing that information. (Doc. No. 2-4 at 3.) This response was repeated after OSHA requested that if T&T Offshore "has no documents responsive to the request, please specify so." (Doc. No. 2-5; Doc. No. 2-6 at 5.) Subpoenas *duces tecum*—subpoenas for documents and tangible things—do not require the recipient to create documents that do not exist. T&T Offshore also has provided OSHA with the names of employees who may have knowledge of facts pertinent to OSHA's investigation, and OSHA has interviewed some of those individuals, while declining to interview others.

### E. This action is frivolous and solely seeks to harass T&T Offshore.

Throughout the inspection process, T&T Offshore has worked in good faith to provide OSHA with all relevant information that OSHA has requested. It has provided hundreds of pages of documents at OSHA's request and has presented multiple employees for interviews. Despite these efforts, the Secretary has continued to seek to enforce two subpoenas that have several obvious and noted defects, the most glaring of which is that neither subpoena—the January 3, 2018 subpoena and the February 13, 2018 subpoena—was ever served on T&T Offshore.[1] T&T Offshore has repeatedly sought from OSHA the reason for the request for contact information as well as the legal authority OSHA believes it has to seek information in an accident-based inspection that has no known relevance to the accident, but OSHA has never provided any basis. Moreover, if the information sought were truly "essential" to OSHA's investigation, it could have and should have sought the information months ago. Because OSHA has never provided any

---

[1] Somewhat embarrassingly, the Secretary failed to properly serve the Petition in this case as well. *See* Respondent's Motion to Dismiss.

legitimate rationale for its subpoena, the only purpose discernable is to harass T&T Offshore and to engage in a fishing expedition of its business practices.

**F. Tolling the statute of limitations is improper.**

While the Secretary has requested that the Court toll the statute of limitations for it to issue citations, it has provided no legal authority to support either the ability of the Court to toll the statute of limitation or the Secretary's qualification for such tolling. T&T Offshore is unaware of any authority that permits the Secretary's statute of limitations to be equitably tolled. Moreover, where, as here, the Secretary has had the ability to bring this enforcement action for months and has no provided no basis for his delay, tolling the statute would not be equitable because the Secretary has brought about his own circumstances. As such, the Court should dismiss this request out of hand.

**G. The Court should not award the Secretary attorneys' fees.**

The Secretary has provided no basis for his assertion that he is entitled to attorneys' fees. As the Secretary is represented by attorneys within his own Department, it also does not appear that he has incurred any attorneys' fees in any event.

**H. Equal Access to Justice Act**

T&T Offshore requests the Court award it its costs and reasonable attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

Under the Act, the Court *shall* award costs and attorneys' fees to the prevailing party unless it finds that the Secretary's position "was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

The Secretary's position here is not remotely justified, let alone substantially so. OSHA failed to abide by its own procedures in the FOM to issue the subpoena to T&T, including failing

to serve T&T with the subpoena. Attempting to enforce an obviously void subpoena cannot be considered substantially justified. Additionally, the document(s) the subpoena seeks are irrelevant to OSHA's inspection, invades the privacy of T&T Offshore's many employees, and unduly burdens the company in having to produce nearly all of its documents for a one year span.

Accordingly, T&T Offshore requests the Court award it its costs and attorneys' fees in incurred in defense of the Secretary's frivolous action.

## Conclusion

For the foregoing reasons, the Court should dismiss this frivolous enforcement action regarding a subpoena that was never served, that has obvious substantive defects, and that T&T Offshore has in any event complied with.

Respectfully submitted,

**FISHER & PHILLIPS LLP**

By: _____
    **Pamela D. Williams**
    Texas Bar No. 00784017
    S.D. No. 26863
    910 Louisiana, Suite 4000
    Houston, TX 77002
    Main: 713-290-0150
    Fax:   713-290-0151
    E-mail: pwilliams@fisherphillips.com

    **George J. Parnham**
    Texas Bar No. 15532000
    440 Louisiana, Suite 200
    Houston, TX 77002
    (713) 224-3967
    (713) 224-2815
    georgeparnham@aol.com
    mary@georgeparnham.com

**ATTORNEYS FOR RESPONDENT**

# **CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing was served on March 15, 2018, to the following counsel of record via electronic mail, facsimile and to all known Filing Users through the Notice of Electronic Filing.

    Josh Bernstein
    Carlton C. Jackson
    United States Department of Labor
    Office of the Solicitor
    525 S. Griffin Street, Suite 501
    Dallas, TX 75202
    bernstein.josh@dol.gov

                                        Pamela D. Williams